UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JACQUELINE WRIGHT, as next of kin and on behalf of the wrongful death beneficiaries of RACHEL COOK WRIGHT,<br><br>    Plaintiff,<br><br>v.<br><br>SSC NASHVILLE OPERATING COMPANY LLC d/b/a Greenhills Health and Rehabilitation Center,<br><br>    Defendant. | NO. 3:16-cv-00768<br>JUDGE CRENSHAW |

## MEMORANDUM OPINION

SSC Nashville Operating Company LLC d/b/a Greenhills Health and Rehabilitation Center ("SSC") has filed a Motion to Compel Arbitration and Stay Lawsuit. (Doc. No. 22.) Jacqueline Wright ("Plaintiff") has filed a Response (Doc. No. 24), and SSC has filed a Reply (Doc. No. 27). For the reasons below, that motion is **GRANTED** and the case is **STAYED**. The Court will administratively close the matter, and it may be reopened for cause on the motion of either party. Plaintiff's Motion to Ascertain Status (Doc. No. 28) is **DENIED** as moot.

### I. BACKGROUND

On January 19, 2006, Rachel Cook Wright executed a durable power of attorney and healthcare power of attorney in favor of Plaintiff, her daughter. (Doc. Nos. 22-3 & 22-4.) On December 1, 2014, Rachel Cook Wright was admitted to the SSC-operated Greenhills Health and Rehabilitation Center ("GHRC"). (Doc. No. 1-2 at ¶ 11.) Pursuant to her mother's admission to the facility, Plaintiff signed several portions of a Resident Admission Agreement ("RAA"). (Doc.

1

No. 24-1 at 13–15, 20, 32, 45–46, 48.) The RAA includes an integration clause providing that "This Agreement . . . supersedes all other agreements . . . between the parties" and that the "Agreement may be amended only by a written agreement signed on behalf of the Facility and the Resident." (Id. at 12.)

On the same day, Plaintiff signed a document entitled "Dispute Resolution Program" ("DRP"). The DRP provides that the Wrights "waive their right to a judge or jury trial" for any "dispute" arising with SSC, "dispute" being defined as "a cause of action either Party could bring in a court of law for any claim totaling $50,000." (Doc. No. 23-1 at 2.) The DRP provides three possible signature lines for the resident or her representative: one for "[i]f the resident is mentally competent to consent to this Agreement under state law"; one for "[i]f competent resident is unable to physically execute the Agreement and authorizes a representative to sign Agreement on the resident's behalf"; and one for "[i]f the resident is adjudged incompetent." (Id. at 5–6.) The document provides no signature line, however, for the representative of a resident who is incompetent but has never been formally adjudged so. Plaintiff signed the line pertaining to a "competent resident [who] is unable to physically execute the Agreement and authorizes a representative to sign," despite the fact that, the parties agree, Rachel Cook Wright was not mentally capable of making decisions for herself at the time. (Doc. No. 24 at 2; Doc. No. 27 at 3.)

The DRP also calls for signatures from one "Facility Agent" and two "Facility Witness[es]." (Doc. No. 23-1 at 5–6.) The only signature appearing on the document on behalf of SSC, however, is that of Katherine Hunter on the line for "Facility Witness #1." The same Katherine Hunter appears to have executed the RAA on behalf of SSC. (Doc. No. 24-1 at 13, 15, 20, 32, 45.) There, she is referred to as a "Facility Representative." (Id. at 15, 20.)

Rachel Cook Wright died on December 15, 2014. (Doc. No. 1-2 at ¶ 23.) Plaintiff alleges that her mother's death was a result of GHRC staff allowing her to become dehydrated and develop infections. (Id. at ¶ 22.) On March 30, 2016, Plaintiff sued SSC and five other Defendants for claims related to her mother's death. (Id. at ¶¶ 26–37.) Defendants jointly removed the case to this Court based on diversity of citizenship. (Doc. No. 1 at ¶¶ 2–8.) Plaintiff stipulated to dismissal without prejudice of all defendants other than SSC. (Doc. Nos. 16 & 20.) SSC filed a motion to compel arbitration and stay the case. (Doc. No. 22.)

## II. ANALYSIS

### A. Standard of Review

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, where a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and to stay or dismiss proceedings until the completion of arbitration. Glazer v. Lehman Bros., Inc., 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). The FAA creates a strong presumption in favor of arbitration, O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 355 (6th Cir. 2003), and any doubts regarding arbitrability must be resolved in favor of arbitration. Fazio v. Lehman Bros., Inc., 340 F.3d 386, 392 (6th Cir. 2003). Nevertheless, an arbitration agreement may be voided for the same reasons for which any contract may be invalidated under state law, "provided the contract law applied is general and not specific to arbitration clauses." Fazio, 340 F.3d at 393.

Where a party challenges the validity of an arbitration clause that is part of a larger agreement, she must rely on defects that would render the arbitration clause in particular, not the contract itself, invalid. Burden v. Check into Cash of Ky., LLC, 267 F.3d 483, 488 (6th Cir. 2002). That is, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity

3

is considered by the arbitrator in the first instance." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445–46 (2006).

**B. Enforceability**

As an initial matter, the Court concludes that Plaintiff's claims fall within the scope of the plain language of the DRP. Plaintiff nevertheless argues that the DRP is unenforceable for three reasons: (1) Plaintiff signed a signature line that did not accurately reflect her legal relationship with her mother; (2) the agreement was signed by only one representative of the facility, on a line apparently intended for a witness; and (3) the integration clause of the RAA supersedes the DRP.[1] Because each of these objections attacks the DRP itself and relies on general principles of contract law, each is appropriate for consideration by the Court before granting a motion to compel arbitration.

Plaintiff's arguments related to the parties' signatures seem to be based in a highly formalistic, technical vision of contractual formation that is not reflected in Tennessee law. "[I]n Tennessee, otherwise binding written contracts need not be signed in order for an arbitration clause contained therein to be enforceable." T.R. Mills Contractors, Inc. v. WRH Enters., LLC, 93 S.W.3d 861, 870 (Tenn. Ct. App. 2002). "The key," rather, "is mutual assent to be bound." Robert J. Denley Co. v. Neal Smith Const. Co., No. W2006-00629-COA-R3CV, 2007 WL 1153121, at *3 (Tenn. Ct. App. Apr. 19, 2007). "In determining mutuality of assent, courts must apply an objective standard based upon the parties' manifestations." Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 524 (Tenn. 2005) (citing T.R. Mills, 93 S.W.3d at 866).

---

[1] Plaintiff's counsel also speculates that Plaintiff's signing the wrong line suggests that Plaintiff had doubts about her legal authority to enter into the contract under her powers of attorney. (Doc. No. 24 at 2.) Plaintiff does not, however, actually advance any challenge to either the durable power of attorney or healthcare power of attorney.

Tennessee law permits a court to consider the parties' respective levels of sophistication in determining whether mutual assent has been reached. See Wofford v. M.J. Edwards & Sons Funeral Home Inc, 490 S.W.3d 800, 812 (Tenn. Ct. App. 2015), appeal denied (May 6, 2016). Accordingly, an individual consumer may be held not to have assented in a situation where a more sophisticated commercial entity would. Id. Even considering Plaintiff's status as a mere consumer, however, the signatures on the DRP are plainly adequate to objectively manifest mutual assent. That the signatories happened to sign the wrong lines does not render the agreement a nullity. Plaintiff moreover cites no authority for the proposition that the lack of two additional signature witnesses renders the DRP unenforceable. Plaintiff's arguments based on the signatures or lack thereof fail.

Plaintiff's argument with regard to the integration clause is similarly unavailing. When a court interprets a contract under Tennessee law, its "role is to ascertain the intention of the parties." MLG Enters., LLC v. Johnson, No. M2014-01205-SC-R11-CV, 2016 WL 4582174, at *3 (Tenn. Sept. 2, 2016) (quoting 84 Lumber Co. v. Smith, 356 S.W.3d 380, 383 (Tenn.2011)). While the RAA does purport to supersede all other agreements, it also states that it may be amended in writing. The parties signed the agreements, by all appearances, essentially contemporaneously. It would make little sense to sign the DRP while at the same time expecting it to be wholly superseded. A much more plausible reading of the parties' intent is that the DRP is an amendment to the RAA and remains enforceable.

This court has construed the FAA as permitting either dismissal or a stay of consideration of claims pending arbitration. See Dean v. Draughons Jr. Coll., Inc., 917 F. Supp. 2d 751, 764 (M.D. Tenn. 2013); Tenn. Imps., Inc. v. Filippi, 745 F. Supp. 1314, 1323 (M.D. Tenn. 1990). At this juncture, SSC has requested only a stay, and the Court is reluctant to dismiss the matter on its

own motion. Nevertheless, the Court sees very little left for it to do in this case, at least until arbitration is completed. Accordingly, the Court will administratively close the case. If either party wishes to re-open it, that party may do so by way of a motion setting forth the status of the arbitration proceeding and explaining the ground for seeking administrative re-opening.

## VI. CONCLUSION

For the foregoing reasons, SSC's Motion to Compel Arbitration and Stay Lawsuit is **GRANTED**. Plaintiff is **ORDERED** to submit to arbitration, and this case is **STAYED** pending resolution. Plaintiff's Motion to Ascertain Status is **DENIED** as moot. The case is **ADMINISTRATIVELY CLOSED** and may be reopened for cause on the motion of either party.

The Court will issue an appropriate Order.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE